IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **SUSAN SADLER**,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>**FRED MEYER STORES, INC.**,<br><br>　　　　Defendant. | Case No. 3:17-cv-1269-SI<br><br>**OPINION AND ORDER** |

John David Burgess, Daniel Snyder, and Carl Post, LAW OFFICES OF DANIEL SNYDER, 1000 SW Broadway, Suite 2400, Portland, OR 97205. Of Attorneys for Plaintiff.

Rebecca Boyette, Jeffrey S. Eden, and Nathan D. Sramek, SCHWABE, WILLIAMSON, & WYATT, P.C., 1211 SW Fifth Ave., Suite 1900, Portland, OR 97204. Of Attorneys for Defendant.

**Michael H. Simon, District Judge.**

　　　　Plaintiff Susan Sadler ("Sadler") alleges that Defendant Fred Meyer Stores, Inc. ("Fred Meyer") discriminated against her, accompanied by her service animal, on the basis of Sadler's disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations in a place of public accommodation in violation of Title III of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12182 and Oregon Revised Statutes §§ 659A.142

and 659A.143. Before the Court is Defendant's motion for summary judgment. For the reasons that follow, Defendant's motion is denied.

## STANDARDS

A party is entitled to summary judgment if the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party has the burden of establishing the absence of a genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The court must view the evidence in the light most favorable to the non-movant and draw all reasonable inferences in the non-movant's favor. *Clicks Billiards Inc. v. Sixshooters Inc.*, 251 F.3d 1252, 1257 (9th Cir. 2001). Although "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge . . . ruling on a motion for summary judgment," the "mere existence of a scintilla of evidence in support of the plaintiff's position [is] insufficient . . . ." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 255 (1986). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citation and quotation marks omitted).

## BACKGROUND

For purposes of its motion for summary judgment, Fred Meyer does not dispute that Sadler is a disabled person. She suffers from degenerative disc disease, fibromyalgia, major depressive disorder, borderline personality disorder, post-traumatic stress disorder ("PTSD"), and generalized anxiety disorder. Sadler has a dog named "Annabelle" that she contends qualifies as a "service dog" under the ADA. Sadler asserts that she and her husband, Russel Mumford ("Mumford"), trained Annabelle to help Sadler with her disabilities.

Fred Meyer owns a chain of hypermarket superstores. Between December 19, 2016 and January 6, 2017, Sadler visited the Fred Meyer store location in Warrenton, Oregon at least three times. During these visits, Sadler alleges that Fred Meyer discriminated against her based on her disability and because she was accompanied by a service animal.

## DISCUSSION

Fred Meyer moves for summary judgment, arguing that Sadler fails to make a *prima facie* case for discrimination. Fred Meyer contends that Sadler is unable to do so because she cannot prove that: (a) Annabelle qualifies as a service animal; or (b) Sadler requested a reasonable modification in policy, practice, or procedure to accommodate her disability that Fred Meyer denied.

**A. Service Animal**

Fred Meyer argues that Sadler cannot show that there is a genuine dispute that Annabelle is a service animal under the ADA or Oregon law. Federal regulations define "service animal" as:

> any dog that is individually trained to do work or perform tasks for the benefit of an individual with a disability, including a physical, sensory, psychiatric, intellectual, or other mental disability. . . . The work or tasks performed by a service animal must be directly related to the individual's disability. Examples of work or tasks include, but are not limited to, . . . helping persons with psychiatric and neurological disabilities by preventing or interrupting impulsive or destructive behaviors. The crime deterrent of an animal's presence and the provision of emotional support, well-being, comfort, or companionship do not constitute work or tasks for the purpose of this definition.

28 C.F.R. § 36.104. Oregon law similarly defines an "assistance animal" as "a dog . . . that has been individually trained to do work or perform tasks for the benefit of an individual." Or. Rev. Stat. § 659A.143(1)(a). The U.S. Department of Justice has determined that a dog "trained to sense an anxiety attack is about to happen and take a specific action to help avoid the attack or

lessen its impact . . . qualif[ies] as a service animal," but a dog that merely provides comfort does not. *Frequently Asked Questions about Service Animals and the ADA*, U.S. DEP'T OF JUSTICE (July 20, 2015), *available at* https://www.ada.gov/regs2010/service_animal_qa.pdf.

Fred Meyer argues that Annabelle merely accompanies Sadler for comfort and does not perform any task that would qualify Annabelle as a protected service animal. Fred Meyer further argues that Annabelle is not a service animal because: (a) no evidence substantiates the contention that Annabelle can sense when Sadler is suffering from anxiety or PTSD symptoms; and (b) Sadler does not continuously rely on Annabelle to perform specific tasks at all times.

Sadler responds that she and her husband individually trained Annabelle to perform the task of intervening when Sadler shows signs of anxiety or symptoms of PTSD to help prevent anxiety attacks and other consequences of PTSD from worsening. This is for the benefit of Sadler and directly relates to her disability. Sadler testified at deposition that Annabelle's training lasted four to five months, and Sadler described how she and her husband taught Annabelle to recognize and respond to Sadler's symptoms. Sadler also testified that Annabelle jumps up or paws at Sadler or licks Sadler's face to remind her to calm down when Sadler shows signs of anxiety. Further, the law does not require that a service animal be professionally trained.[1]

Fred Meyer, however, contends that there is no evidence that Annabelle actually senses when Sadler is anxious because Sadler admitted that Annabelle sometimes jumps onto her when she is not anxious. Although Annabelle may jump on Sadler at times other than when she needs assistance, Sadler also testified that Annabelle performs her trained tasks and reacts to Sadler

---

[1] *Frequently Asked Questions about Service Animals and the ADA*, U.S. DEP'T OF JUSTICE (July 20, 2015), https://www.ada.gov/regs2010/service_animal_qa.pdf ("People with disabilities have the right to train the dog themselves and are not required to use a professional service dog training program.").

when Sadler is anxious. Fred Meyer offers no legal authority for the proposition that an occasional "false positive" or "false hit" precludes Annabelle from serving as a service animal.

Fred Meyer also argues that Sadler does not continuously rely on Annabelle at all times. Fred Meyer notes that Sadler sometimes leaves Annabelle at home when she shops. In addition, for part of the time that Annabelle was in the shopping cart when Sadler was in a Fred Meyer store, Sadler stood too far from the cart for Annabelle to perform any service tasks. Fred Meyer, however, offers no authority for the proposition that a disabled person must continuously rely upon an animal at all times for that animal to qualify as a service animal under the ADA or Oregon law.

On summary judgment, the Court must view the evidence in the light most favorable to the non-moving party, and "all justifiable inferences are to be drawn in that party's favor." *Hunt v. Cromartie*, 526 U.S. 541, 552 (1999) (alteration omitted) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). Drawing all reasonable inferences in Sadler's favor, a rational trier of fact could find that Annabelle qualifies as a service animal. Sadler testified that she trained Annabelle to recognize symptoms of her disability and to perform specific actions to help Sadler cope with anxiety attacks and PTSD. Thus, Sadler has presented sufficient evidence to establish a genuine issue that Annabelle is a service animal as that term is described under the ADA and Oregon law.

**B. Discrimination on the Basis of Disability**

Title III of the ADA prohibits discrimination "on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation . . . ." 42 U.S.C. § 12182(a). The Ninth Circuit has held that "[t]o prevail on a Title III claim, the plaintiff must show that (1) she is disabled within the meaning of the ADA; (2) the defendant is a private entity that owns, leases, or operates a place of

public accommodation; and (3) the plaintiff was denied accommodations by the defendant because of her disability." *Molski v. M.J Cable, Inc.*, 481 F.3d 724, 730 (9th Cir. 2007); *see also* 42 U.S.C. §§ 12182 (a)-(b). Title III further defines both "general" and "specific" prohibitions. 42 U.S.C. § 12182(b).

Fred Meyer argues that Sadler has not produced sufficient evidence of discrimination to survive summary judgment. Fred Meyer asserts that Sadler must prove the following elements to establish *prima facie* evidence of discrimination under either Title III or Oregon law:

> (1) she is a person with a disability; (2) the defendant entity is a public accommodation; (3) the plaintiff requested a reasonable modification in policy, practice, or procedure to accommodate her disability; and (4) the defendant denied the requested modification

ECF 18 at 13 (citing *Johnson v. Gambrinus Co./Spoetzel Brewery*, 116 F.3d 1052, 1059-60 (5th Cir. 1997); *Martin v. PGA Tour, Inc.*, 204 F.3d 994, 1001 (9th Cir. 2000) (citing *Johnson*)). Fred Meyer further asserts that Sadler has not offered any evidence that she requested a reasonable modification in policy, practice, or procedure that Fred Meyer denied.

Although evidence of a request for a reasonable modification is relevant to one "specific" prohibition under Title III, specifically, a failure to provide a reasonable modification in a policy, practice, or procedure, Plaintiff does not assert claims solely arising under this single specific prohibition. Instead, Plaintiff cites in her response to Defendant's motion for summary judgment both the general and specific prohibitions described in Title III, which prohibit more than merely a failure to provide a reasonable modification.

For example, under the "general prohibition[s]" a party may assert that he or she suffered discrimination because, among other things, the individual was denied the "opportunity . . . to participate in or benefit from the goods, services, facilities, privileges, advantages, or accommodations of an entity," or that the "opportunity to participate in or benefit from a good,

PAGE 6 – OPINION AND ORDER

service, facility, privilege, advantage, or accommodation . . . is not equal to that afforded to other individuals. 42 U.S.C. § 12182(b)(1)(A)(i)-(ii). Sadler alleges several acts that could reasonably be found to constitute discrimination under this general prohibition, such as verbal harassment, permitting customers to "berate" plaintiff, and banning plaintiff from shopping at a Fred Meyer store.

Sadler also claims that Fred Meyer discriminated against her by repeatedly accosting her about her animal and telling her that she would have to leave the store if she did not place Annabelle on a leash. Fred Meyer argues that there is no evidence that Sadler could not leash Annabelle or that she ever told that to anyone at Fred Meyer. Sadler, however, testified in her deposition that her primary care doctor told her that she should not hold a leash and wrote her a doctor's note to that effect. Mumford testified in his deposition that "we've" told Fred Meyer employees that Annabelle is an ADA registered animal and is not to be leashed. Based on this testimony, the Court finds that there are genuine issues of material fact as to whether Sadler could not hold and leash Annabelle and whether Sadler, directly or indirectly through Mumford, communicated to Fred Meyer her inability to hold a leash. This claim involves a request for a modification in Fred Meyer's policy, and thus Mumford's deposition testimony raises a sufficient issue of fact, even on the claim on which Fred Meyer focuses its argument: whether Sadler requested a "reasonable modification in policy, practice, or procedure to accommodate her disability." *Johnson*, 116 F.3d at 1059-60.

Sadler also alleges that Fred Meyer banned her from the store because she and her husband complained about the discriminatory treatment that she received. The parties agree that

Fred Meyer "trespassed" Mumford from the store.[2] The parties disagree on whether Fred Meyer "trespassed" Sadler from its Warrenton store. Fred Meyer argues that it did not trespass Sadler for any of its stores. Mumford, however, testified in his deposition that a Fred Meyer manager told Mumford that both he and Sandler were "86'd," meaning banned, from the property and "could never come back again." According to Mumford, the store manager referred to both Mumford and Sadler, whom the manager called Mumford's "girlfriend," and said "you guys are 86'd from this store." Fred Meyer denies that it has banned, or "86'd," Sadler from any store. Fred Meyer also notes that Sadler has not been excluded from any Fred Meyer store since that last visit, but also concedes that she has not attempted to return since that last visit. This testimony raises a genuine issue of fact regarding whether Fred Meyer banned Sadler from the store and thus, whether Fred Meyer denied Sadler access or accommodation because of her disability. *See Molski*, 481 F.3d at 730.

## CONCLUSION

Fred Meyer's motion for summary judgment (ECF 18) is DENIED.

**IT IS SO ORDERED**.

DATED this 5th day of October, 2018.

/s/ *Michael H. Simon*
Michael H. Simon
United States District Judge

---

[2] The parties use the verb "trespassed" to mean that a Fred Meyer employee told someone that he or she was no longer welcome on Fred Meyer's private property and that any future entries would be treated as a trespass.